UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NICOLAS POORMAN, *et al.*,
      Plaintiffs,
      v.

                              Case Number 2:23-cv-3945
                              Judge Edmund A. Sargus, Jr.
                              Magistrate Judge Elizabeth P. Deavers

SERVBANK, *et al.*,
      Defendants.

## OPINION AND ORDER

This matter is before the Court on four Motions to Dismiss filed by Defendants: Servbank's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 47), Linda Case's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 53), The Money Source, Inc.'s ("TMS") Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 54), and Defendants Servbanc Holdco Inc. ("Holdco") and Stavros Papastavrou's Joint Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 55). These Motions are ripe for review. For the reasons stated below, all the Motions to Dismiss are **GRANTED in part** and **DENIED in part**. Additionally, the Court **DENIES as moot** Defendants' Motion to Strike (ECF No. 63.)

## BACKGROUND

Plaintiffs Nicolas and Kayla Poormans' home in Circleville, Ohio is subject to a promissory note and mortgage. (Second Am. Compl. ("SAC"), ECF No. 38, ¶¶ 7, 17.) Servbank currently services the note, but it was previously serviced by TMS. (*Id.* ¶¶ 7, 10.) The claims in this case stem from a series of communications between Plaintiffs and TMS and Servbank that occurred between 2022 and 2024. (See *id.*)

### I.    Factual Background

Plaintiffs' home was subject to a foreclosure proceeding in the Pickaway County Court of

Common Pleas. (SAC, ¶ 23.) The communications at issue began in August 2022 when Plaintiffs submitted a loan modification application to TMS by email. (*Id.* ¶¶ 23–24.) Plaintiffs allege that TMS failed to provide timely written acknowledgment that their application was complete, as required by law, so they mailed TMS a notice of error ("NOE"). (*Id.* ¶ 30.) Around the same time, Plaintiffs also sent TMS two requests for information ("RFI"), seeking specific information regarding their loan modification application. (*Id.* ¶¶ 25–28.) According to Plaintiffs, TMS failed to timely acknowledge and respond to the NOE and RFIs. (*Id.* ¶¶ 29, 36–37.) Additionally, they allege that TMS's untimely response to the NOE contained false information regarding the date that the loan modification application was received and an alleged response that TMS sent to Plaintiffs. (*Id.* ¶¶ 33–35.)

In October 2022, Plaintiffs received a loan modification offer that contained a trial payment plan, which they completed in the following months. (*Id.* ¶¶ 41–42.) On February 13, 2023, Plaintiffs received permanent loan modification documents from TMS. (*Id.* ¶ 59.) They executed and returned the documents to TMS on March 2, 2023. (*Id.*) The next day, Plaintiffs received a letter stating that TMS is being "rebranded" to Servbank effective April 1, 2023, and that many aspects of the loan servicing would remain the same. (*Id.* ¶¶ 44, 47.)

On March 31, 2023, Plaintiffs attempted to make a payment in accordance with the loan modification, but TMS refused payment and stated that the loan modification had been cancelled. (*Id.* ¶ 60.) According to TMS, it was cancelled because executed loan modification documents were sent one day late. (*Id.* ¶ 62.)  Believing their loan modification was wrongfully terminated, Plaintiffs sent TMS a second NOE. (*Id.* ¶ 63.) Because TMS allegedly failed to timely acknowledge and respond to the second NOE, Plaintiffs sent a third NOE, which TMS also allegedly failed to timely acknowledge and respond to. (*Id.* ¶¶ 71–74, 96–97.) On May 30,

2

2023, Plaintiffs received two responses to their second NOE—an acknowledgement and a substantive response. (*Id.* ¶¶ 76–77, 85.) Because of the dates and information in the letters, Plaintiffs allege that the letters contained either false or misleading information about the date the second NOE was received and TMS and Servbank being separate companies. (*Id.* ¶ 81–82, 88–89, 92.)

Plaintiffs submitted a second loan modification application on May 30, 2023, and received a permanent loan modification offer on June 7, 2023. (*Id.* ¶¶ 95, 98.) According to the accompanying letter, Plaintiffs were to execute and return the documents to Servbank within 14 days after receiving them. (*Id.* ¶ 101.) Plaintiffs returned the executed documents 14 days later, on June 21, 2023. (*Id.* ¶ 103.) Two days later, Servbank mailed Plaintiffs a notice stating their loan was past due and in default. (*Id.* ¶ 108.) On June 28, 2023, Plaintiffs sent a third RFI inquiring whether the loan modification documents were finalized. (*Id.* ¶ 103.) They allege that Servbank failed to timely acknowledge and respond to the third RFI, and that the eventual, untimely response contained false information. (*Id.* ¶¶ 106, 111, 116.)

Plaintiffs attempted to make a payment on June 30, 2023, per the modified loan payment plan, but Servbank rejected the payment. (*Id.* ¶ 109.) A Servbank employee informed them that their loan modification plan was cancelled because their modification documents were sent late. (*Id.* ¶ 117.) According to the employee, the executed documents were due 14 days after they were mailed, not 14 days after they were received. (*Id.*) Because of this, Plaintiffs sent a third NOE, which they allege Servbank failed to timely acknowledge or respond to. (*Id.* ¶¶ 119–21, 125, 127.) They also assert that the untimely responses contained false or inaccurate information. (*Id.* ¶¶ 124, 129.) Plaintiffs mailed a fourth NOE because of the untimely responses to the third NOE. (*Id.* ¶ 130.) They allege that Servbank failed to timely acknowledge and respond to the

3

fourth NOE. (*Id.* ¶¶ 132–33.)

Plaintiffs submitted a third loan modification application and fifth RFI in December 2023. (*Id.* ¶¶ 136, 138.) Servbank timely responded to these communications (*Id.* ¶¶ 137, 141–42.) In February 2024, Plaintiffs received, executed, and returned the new loan modification documents. (*Id.* ¶¶ 143, 145.) The third loan modification offer contained different terms than the first two loan modification offers. (*Id.* ¶ 144.) On March 11, 2024, Plaintiffs sent a fifth RFI requesting the fully executed loan modification documents. (*Id.* ¶ 146.) Servbank timely acknowledged this request, and Plaintiffs subsequently received the fully executed loan modification paperwork. (*Id.* ¶¶ 148–50.)

In total, Plaintiffs allege that Defendants failed to timely acknowledge and/or respond to four NOEs (*Id.* ¶¶ 184–85); two RFIs (*Id.* ¶¶ 176–77); and two loan modification applications. (*Id.* ¶¶ 195–200). They also allege that at least nine of Defendants' communications contained false, misleading, or deceptive information. (*Id.* ¶ 205.)

## II.  Procedural History

Plaintiffs filed this lawsuit in November 2023. (ECF No. 1.) Their first complaint brought five claims against Servbank: three for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, intentional fraudulent misrepresentation, and negligent misrepresentation. (*Id.*) Servbank filed a motion to dismiss one of the RESPA claims and the negligent misrepresentation claim. (ECF No. 17.) The Court denied the motion to dismiss and permitted Plaintiffs to amend their complaint to correct a typographical error. (ECF No. 26.) Plaintiffs subsequently filed the First Amended Complaint. (ECF No. 34.)

While conducting discovery, Plaintiffs learned that Servbank asserts to be a separate entity from TMS. (ECF No. 27, PageID 945–46.) Due to this new information, Plaintiffs sought

4

leave to file a Second Amended Complaint to add new parties and claims. (*Id.* PageID 950–51.) The Court granted leave. (ECF No. 37.) The Second Amended Complaint brings claims against Servbank and four other defendants: (1) TMS; (2) Holdco, which Plaintiffs allege is the parent company of TMS and Servbank; (2) Stavros Papastavrou, who Plaintiffs allege is the owner of Holdco; and (3) and Linda Case, a Servbank employee. (SAC, ¶¶ 13, 15–16.) The Second Amended Complaint contains eight claims: three for RESPA violations, intentional fraudulent misrepresentation, negligent fraudulent misrepresentation, civil conspiracy, a Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*, claim, and an Ohio Corrupt Practices Act ("OCPA"), Ohio Rev. Code § 2923.31, *et seq*., claim. (*See id.*) The tort claims are against all Defendants. (*See id.*) The RESPA, RICO, and OCPA claims are against all Defendants except Ms. Case. (*See id.*)

The Second Amended Complaint alleges harm stemming from two actions: Defendants' mismanagement of Plaintiffs' loan modification applications and related communications and the Defendants' attempt at avoiding liability by holding out Servbank and TMS as separate entities. (*See id.*) Plaintiffs assert that they have suffered the following harms:

> (a) increased fear distress over the possibility of losing their home in a foreclosure sale; (b) an increase in the amount of attorneys' fees they have had to pay; (c) a loss of opportunity as the new modification included a partial claim where $37,365.53 would bear no interest, (d) additional expenses as the arrears have continued to rise to a level that they would not have arisen to had Defendant not wrongfully rejected [the first two loan modification applications], (e) costs associated with obtaining money orders and mailing documents repeatedly (f) postage paid for having to send NOEs that would not have been necessary had Defendant responded to the RFIs properly; (g) the potential loss of their home valued at over $212,000 according to Zillow.com; and (i) the cost necessary to serve this Complaint.

(*Id.* ¶ 171.)

Defendants filed four Motions to Dismiss seeking dismissal of all of Plaintiff's claims. (ECF Nos. 47, 53, 54, 55.) Plaintiffs responded to Defendants' motions (ECF Nos. 48, 59) and

5

Defendants replied (ECF Nos. 51, 62).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (clarifying plausibility standard from *Twombly*). In ruling on a motion to dismiss, the Court "must take all the factual allegations in the complaint as true," but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

**ANALYSIS**

Defendants move to dismiss all of Plaintiffs' claims. In deciding these Motions to Dismiss, the Court will consider the Second Amended Complaint and its exhibits, as well as the four motions to dismiss, two responses in opposition, and two replies in support, but no other documents filed on the docket given that a Rule 12(b)(6) motion tests the sufficiency of the pleadings. The Court notes that the briefs submitted by the parties span over 250 pages, mostly consisting of conclusory and repetitive arguments that often lack legal support. As this litigation

proceeds, the parties are reminded that they must abide by this Court's Local Civil Rules. Local Civil Rule 7.2(a) states that "All motions and applications tendered for filing *shall be accompanied by a memorandum in support thereof that shall be a brief statement* of the grounds, *with citation of authorities relied upon*." S.D. Ohio Civ. R. 7.2(a)(1) (emphasis added).

The Court first addresses Defendants' arguments that relate to multiple claims, then proceeds to address the arguments against Plaintiffs' claims.

## I.    Heightened Pleading Standard

Claims of fraud are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To accomplish this, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 411 (6th Cir. 2022) (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)).

The Second Amended Complaint alleges that at least nine of Defendants' communications contained fraudulent misrepresentations:

- April 1, 2023 Loan Modification named Servbank as the lender rather than TMS, even though no assignment had transferred the loan from TMS to Servbank. Plaintiffs contend this was fraudulent because, if the two companies are distinct entities, Servbank never acquired the loan and could not be the lender. (SAC, ¶¶ 210–13.)

- March 3, 2023 Letter claiming that TMS was "rebranding" as Servbank. This is allegedly fraudulent if TMS and Servbank are separate entities. (*Id.* ¶¶ 221–25.)

- May 23, 2023 Letter that gave Plaintiffs 14 days to return the executed offer. Plaintiffs allege this was false because they mailed the executed offer within 14 days but were later told it was late. (*Id.* ¶¶ 227–32.)

- October 27, 2022 Letter that claimed that Plaintiffs' second loan modification application was not received until September 2, 2022 and that a missing-documents

letter was sent on September 7, 2022. Plaintiffs contend that documents received in discovery prove that information to be false. (*Id.* ¶¶ 242–58.)

- May 25, 2023 Letter that falsely stated the date on which Plaintiffs' second NOE was received, as proven by a tracking receipt from USPS. (*Id.* ¶¶ 261–66.)

- May 19, 2023 Letter that was allegedly backdated to show that it was sent within RESPA's timing requirements for such responses. (*Id.* ¶¶ 269–72.)

- July 7, 2023 Letter that allegedly falsely claimed that Plaintiffs' third RFI was sent to the wrong address. Plaintiffs allege that they always sent communications to the correct address. (*Id.* ¶¶ 275–77.)

- November 14, 2023 Letter that falsely characterized the denial of Plaintiffs' second loan modification application as a disengagement. (*Id.* ¶ 205.)

- November 17, 2023 Letter that falsely claimed that Plaintiffs' fourth NOE was sent to the wrong address. (*Id.*)

Given the detailed allegations regarding these communications, the Court finds that Plaintiffs have satisfied the heighted pleading standard on their fraud claims. Accordingly, all arguments made by Defendants that Plaintiffs have not met the heightened pleading standard for fraud are not well taken.

## II.      Relationship Between Servbank and TMS

Plaintiffs contend that "there exists a genuine issue of material fact as to whether TMS and Servbank are the same or different entities, and a 12(b)(6) Motion to Dismiss is not the proper tool to resolve the factual dispute." (ECF No. 48, PageID 2595.) The Court agrees.

The Second Amended Complaint asserts that Plaintiffs initially believed that Servbank and TMS were the same entity for a number of reasons: (1) a letter from TMS stating that it was "rebranding" as Servbank (SAC, ¶¶ 222–24); (2) Servbank has the same address as TMS (*Id.* ¶¶ 49, 216–17); (3) loan modification documents name Servbank as the owner of the loan despite the fact that an assignment of the loan to Servbank never took place (*Id.* ¶¶ 211–13, 218–19); and (4) Servbank responded to communications addressed to TMS after the "rebrand." (*Id.* ¶ 263.)

Plaintiffs later learned, in discovery, that Servbank and TMS purport to be separate companies. (*Id.* ¶¶ 12, 154; ECF No. 38-1, PageID 2148–67.) Plaintiffs allege that if Servbank and TMS are not the same company, then their representations prior to this lawsuit were false. (*Id.* ¶¶ 156–57.) If they are the same company, Plaintiffs allege that Defendants are lying in order to avoid liability in this lawsuit. (*Id.* ¶ 158.)

The relationship between Servbank and TMS is unclear to the Court at this stage of litigation. Accordingly, the Court declines to address arguments made by Defendants that center on conclusions about the relationship between Servbank and TMS.

### III.       Liability of Holdco and Mr. Papastavrou

Additionally, Plaintiffs pursue claims against Holdco and Mr. Papastavrou under a theory of principal liability arising from an alleged agency relationship with Servbank and TMS. (*See* SAC.) Defendants argue that Plaintiffs insufficiently plead an agency relationship between Servbank/TMS and Holdco and Mr. Papastavrou. Specifically, they argue that Plaintiffs fail to plead facts showing that Servbank and TMS had express authority from Holdco and Mr. Papastavrou to send the communications at issue in this case. (Servbank Mot., ECF No. 47, PageID 2582; TMS Mot., ECF No. 54, PageID 2650; Holdco and Papastavrou Mot., ECF No. 55, PageID 2670–71.)

Under Ohio law,[1] an agency relationship may be established by actual authority, "where a consensual relationship exists between the agent and principal," or apparent authority, where a principal's conduct leads a third party to reasonably believe that an agency relationship exists. *Brainard v. Am. Skandia Life Assurance Corp.*, 432 F.3d 655, 661 (6th Cir. 2005). An actual-

---

[1] As a federal court exercising diversity jurisdiction over state common law claims, the Court, sitting in Ohio, applies Ohio law. *See, e.g., Comm'r of Internal Revenue v. Est. of Bosch*, 387 U.S. 456, 464–65, (1967).

authority agency relationship can be established by express authority or implied authority. *Id.* at 661–62.

Holdco and Mr. Papastavrou cite no case law stating that an agency relationship can only be established by pleading express authority. In their reply, they cite case law outlining the general principles of pleading an agency relationship. (Defs.' Second Reply, ECF No. 62, PageID 2814–15.) They quote, "It is insufficient to merely plead the legal conclusions of agency." *Barrett-O'Neill v. Lalo, LLC*, 2014 WL 3895679, *3 (S.D. Ohio Aug. 8, 2014) (King, M.J.) (quoting *Bird v. Delacruz*, 2:04–CV–661, 2005 WL 1625303 (S.D. Ohio July 6, 2005) (Frost, J.)). "Instead, a claimant must plead facts that would support a finding that the alleged agents had actual or apparent authority to act on behalf of another . . . ." *In re Commercial Money Ctr., Inc.*, No. 102CV16000, 2005 WL 2233233, *18 (N.D. Ohio Aug. 19, 2005), *aff'd sub nom. Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327 (6th Cir. 2007).

Plaintiffs have pled the following: Holdco is the parent company of Servbank and TMS (SAC, ¶ 13); Mr. Papastavrou is the owner of Holdco (*Id.* ¶ 15); Servbank and TMS are under the control and direction of Holdco and Mr. Papastavrou; (*Id.* ¶¶ 207, 308, 313); and Holdco and Mr. Papastavrou are using Servbank and TMS to perpetuate fraud by obfuscating the relationship between Servbank and TMS. (*Id.* ¶¶ 91– 92.) Thus, Plaintiffs have sufficiently pled facts alleging some degree of an agency relationship to survive motion to dismiss. *See Spurlark v. Dimension Serv. Corp.*, No. 2:21-cv-3803, 2022 WL 2528098, at *5 (S.D. Ohio July 7, 2022) ("The essential element of an agency relationship is the principal's 'right to control' the actor.") (quoting Restatement (Third) of Agency § 1.01 cmt. f.)). Plaintiffs are not required to plead express authority to sufficiently plead an agency relationship between Servbank/TMS and Holdco and Mr. Papastavrou.

10

Accordingly, Defendants' arguments that Plaintiffs have insufficiently pled an agency relationship are not well taken.

## IV.        Plaintiffs' Claims

### A.        RESPA

Congress enacted the RESPA "in part to provide 'more effective advance disclosure to home buyers and sellers of settlement costs' and in response to 'abusive practices' in the 'real estate settlement process.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (quoting 12 U.S.C. § 2601). Congress later expanded RESPA's scope to include loan servicing. *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (quoting *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012)).

RESPA imposes certain requirements on loan servicers when they receive an inquiry from a borrower. *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 163 (6th Cir. 2015). The Consumer Financial Protection Bureau enacted Regulation X in the Code of Federal Regulations to implement RESPA. Plaintiffs allege that Defendants, excluding Ms. Case, violated the following Regulation X provisions:

- 12 C.F.R. § 1024.35, which imposes certain obligations on a servicer when it receives a Notice of Error ("NOE"). Plaintiffs allege that Defendants failed to timely acknowledge and/or respond to their first, second, third, and fourth NOEs (SAC, ¶¶ 184–85);

- 12 C.F.R. § 1024.36, which imposes certain obligations on a servicer when it receives a Request for Information ("RFI"). Plaintiffs allege that Defendants failed to timely acknowledge and respond to their first and third RFIs (*Id.* ¶¶ 176–77); and

- 12 C.F.R. § 1024.41, which imposes certain obligations on a servicer when it deals with loan modifications. Plaintiffs allege that Defendants improperly handled and failed to adequately communicate with Plaintiffs concerning their first and second loan modification applications. (*Id.* ¶¶ 195–200.)

Defendants argue that the RESPA claims fail because: (1) Plaintiffs fail to allege that

they are "borrowers" under RESPA; (2) Holdco and Mr. Papastavrou are not "servicers" under RESPA; and (3) Servbank and TMS are separate companies and cannot be liable for each other's actions. The Court addresses each argument.

### 1. Whether Plaintiffs Are "Borrowers"

RESPA grants a private right of action to "borrowers." 12 U.S.C. § 2605(f) ("Whoever fails to comply with any provision of this section shall be liable to the borrower . . . ."). But RESPA does not define "borrower." *See* 12 U.S.C. § 2602. The Sixth Circuit defines "borrower" as "someone who is personally obligated on a loan—i.e., someone who is actually borrowing money." *Keen v. Helson*, 930 F.3d 799, 800 (6th Cir. 2019).

Defendants argue that Plaintiffs fail to allege that they are "borrowers" under RESPA. (Servbank Mot., PageID 2579; TMS Mot., PageID 2647.) They assert that the only such allegation in the Second Amended Complaint is a legal conclusion that relies on a nonexistent definition in RESPA. (Servbank Mot., PageID 2579; TMS Mot., PageID 2647.) They also highlight that Plaintiffs have not provided the promissory note and mortgage showing that they are borrowers. (Servbank Mot., PageID 2579; TMS Mot., PageID 2647.)

Notice pleading requires plaintiffs to plausibly allege facts that allow the court to draw reasonable inferences that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A comprehensive reading of the Second Amended Complaint plainly shows that Plaintiffs are "borrowers" under RESPA. Plaintiffs own a home that is subject to a promissory note and a mortgage. The home was in foreclosure, so they applied for a loan modification. Plaintiffs' first loan modification application initiated a series of communications between them and the loan servicers—communications that are now at the root of this lawsuit. Moreover, some of Defendants' own documents, attached as exhibits to the Complaint, name Nicolas and Kayla

12

Poorman as "borrower." (*See, e.g.,* ECF No. 83-3, PageID 2348.)

Defendants argue that even if Nicolas Poorman is a "borrower," Kayla Poorman is not, because she did not sign the promissory note. (Servbank Mot., PageID 2579; TMS Mot., PageID 2647; Holdco and Papastavrou Mot., PageID 2668–70.) Neither Party has provided an executed copy of the promissory note. The Court cannot consider a document that has not been provided to it.

Upon review of the Second Amended Complaint and the documents attached thereto, the Court finds that Plaintiffs have sufficiently pled that both Nicolas and Kayla Poorman are "borrowers" to survive a motion to dismiss.

### 2. Whether Holdco and Mr. Papastavrou Can Be Liable Under RESPA

Holdco and Mr. Papastravou argue that they had no obligation to respond Plaintiffs' communications regarding Plaintiffs' loan because they are not "servicers." (Holdco and Papastavrou Mot., PageID 2668.) Under RESPA, a "servicer" is a "person responsible for servicing a loan." 12 U.S.C. § 2605(i)(2). "Servicing" means "receiving any scheduled periodic payments from a borrower." *Id.* § 2605(i)(3). The provisions that Defendants have allegedly violated impose certain obligations on servicers—for example: "A servicer shall comply with the requirements of this section for any written notice from the borrower . . . ." 12 C.F.R. § 1024.35(a).

Plaintiffs do not allege that Holdco and Mr. Papastravou are "servicers." Instead, they assert that Holdco and Mr. Papastravou can be liable as principals of Servbank and TMS. (Pls.' Second Resp., ECF No. 59, PageID 2786–77.) They provide cases where courts have imposed liability on a principal under RESPA for a servicer's actions. *See Rouleau v. US Bank, N.A.*, No. 14-CV-568-JL, 2015 WL 1757104 (D.N.H. Apr. 17, 2015); *Feldmann v. Lakeview Loan*

13

*Servicing LLC*, No. C20-580 MJP, 2021 WL 1627048 (W.D. Wash. Apr. 27, 2021); *but see Guzman v. USAA Fed. Sav. Bank*, No. 3:23 CV 1193, 2024 WL 1973096, at *10 (N.D. Ohio May 3, 2024) (declining to "wade into the vicarious liability split at this time"); *Christiana Tr. v. Riddle*, 911 F.3d 799, 801, 804–06 (5th Cir. 2018) (declining to impose RESPA vicarious liability on the principal). As such, Holdco and Mr. Papastavrou's argument that they are not servicers misses the mark.

Defendants also argue that Plaintiffs fail to sufficiently plead an agency relationship to establish RESPA vicarious liability. (Servbank Mot., PageID 2582–83; TMS Mot., PageID 2650.) As discussed above, the Court finds that Plaintiffs have sufficiently pled an agency relationship to survive a motion to dismiss. Thus, Plaintiffs' RESPA claims against Holdco and Mr. Papastravou based on an agency relationship are also sufficiently pled to survive a motion to dismiss.

### 3. Distinction Between TMS and Servbank

Servbank argues that it cannot be liable for TMS's communications. (Servbank Mot., PageID 2581.) TMS argues that it cannot be liable for Servbank's communications. (TMS Mot., PageID 2649.) As stated above, the Court finds that there are genuine issues of material fact regarding the relationship between Servbank and TMS. Thus, the Court declines to address these arguments, and the same arguments being made with respect to other claims, at this stage of the litigation.

For the reasons stated above, Defendants' Motions to Dismiss Plaintiffs' RESPA claims are **DENIED**.

### B.        Fraudulent Misrepresentation

Plaintiffs allege that all five Defendants negligently or intentionally made material

fraudulent misrepresentations in their communications for "the purpose of manipulating Plaintiffs during their time of crisis in order to obtain a financial windfall and/or to shield themselves from liability." (SAC, ¶¶ 204, 281.) They assert that at least nine of Defendants' communications contained false, misleading, or deceptive information. (*Id.* ¶ 205.)

Servbank moved to dismiss Plaintiffs' negligent fraudulent misrepresentation claim in its first motion to dismiss. (ECF No. 17.) The Court denied that motion. (ECF No. 26.) Servbank now moves to dismiss the intentional misrepresentation claim. (Servbank Mot., PageID 2582–85.) TMS, Holdco, Mr. Papastavrou, and Ms. Case move to dismiss both the intentional fraudulent misrepresentation claim and the negligent fraudulent misrepresentation claim. (TMS Mot., PageID 2649–53; Holdco and Papastavrou Mot., PageID 2670–76; Case Mot., ECF No. 53, PageID 2632–39.)

Servbank and TMS argue that Plaintiffs fail to show that they relied on the alleged misrepresentations and that the injuries they suffered were proximately caused by the reliance. (Servbank Mot., PageID 2583; TMS Mot., PageID 2651–53.)  In Ohio, justifiable reliance is an essential element of both intentional misrepresentation and negligent misrepresentation. *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989); *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998).

The Court has previously determined that Plaintiffs sufficiently pled "justifiable reliance on Servbank's representations since they followed Servbank's instructions, and as a result suffered economic losses." (ECF No. 26, PageID 942.) The same can be said for TMS because Plaintiffs have alleged it also serviced their loan, and the relationship between TMS and Servbank has not been determined. Accordingly, Servbank's and TMS's Motions to Dismiss the fraudulent misrepresentation claims are **DENIED**.

15

As for Holdco and Mr. Papastavrou, the Second Amended Complaint alleges that Servbank and TMS are agents of Holdco and Mr. Papastavrou and are vicariously liable for the alleged fraudulent misrepresentation of their agents. (SAC, ¶ 207.) Holdco and Mr. Papastavrou's first argument is that Plaintiffs fail to sufficiently plead an agency relationship. (TMS and Papastavrou Mot., PageID 2670–71.) The Court has already discussed this issue above and found that Plaintiffs sufficiently pled an agency relationship.

Holdco and Mr. Papastavrou next argue that Holdco and Mr. Papastavrou cannot be liable because they do not have a direct-customer relationship with Plaintiffs and "Ohio law maintains that a negligent misrepresentation claim requires at least some level of a direct relationship between a plaintiff and defendant." (*Id.* PageID 2675.) Holdco and Mr. Papastavrou provide no support for this argument. They misstate this Court's previous holding that "Ohio law *permits* a negligent misrepresentation claim where the plaintiff making claim is a direct customer of the defendant." (ECF No. 26, PageID 941 (emphasis added).) to argue that a direct relationship *is required* for negligent misrepresentation. That is not the law. As the Court stated in that same opinion, Ohio's definition of negligent misrepresentation allows for recovery from "[o]ne who, in the course of his business, profession, or employment, or *in any other transaction in which he has a pecuniary interest*." (*Id.* PageID 939 (emphasis added).) In Ohio, a principal may be liable for the tort of negligent misrepresentation for the acts of its agent. *See McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt., Inc.*, 622 N.E.2d 1093, 1106–07 (Ohio Ct. App. 1993) (finding genuine issues of material fact in a negligent misrepresentation claim where "[defendant's] agent supplied [plaintiff] with false information"). As the parent company and owner of Servbank and TMS, Holdco and Mr. Papastavrou have a pecuniary interest in Servbank's and TMS's business. Thus, they may be liable for negligent misrepresentation.

Accordingly, Holdco and Mr. Papastavrou's arguments regarding the fraudulent misrepresentation claims are not well taken.

Regarding Ms. Case, the Second Amended Complaint alleges that Ms. Case is an agent of Servbank, TMS, Holdco, and Mr. Papastavrou, and that she assisted in perpetuating fraud by sending Servbank's and TMS's communications to Plaintiffs and affirming Servbank's discovery responses that declare that Servbank and TMS are not the same entity. (SAC, ¶¶ 205, 208.) Ms. Case makes a multitude of arguments that the fraudulent misrepresentation claims against her should be dismissed: that she did not make any representations to Plaintiffs; that Plaintiffs fail to allege reliance and harm from that reliance; that Ms. Case is immune from civil suit for defamatory remarks and false testimony; that Plaintiffs fail to allege that Ms. Case had authority from Holdco or Mr. Papastavrou to send communications to Plaintiffs; and that Plaintiffs fail to allege that they are direct customers of Ms. Case. (Case Mot., PageID 2632–39.) Though voluminous, Ms. Case's arguments are either inapplicable or unsupported by law. Accordingly, the Court declines to consider them at this point. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Reg. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)).

In conclusion, Defendants' Motions regarding Plaintiffs' negligent and fraudulent misrepresentation claims are **DENIED**.

### C. Civil Conspiracy

In their civil conspiracy claim, Plaintiffs assert that all Defendants "maliciously acted in

17

concert to perpetuate fraud in order to shield themselves from liability from violation of federal law" and "to maximize profits by stringing Plaintiffs along in the loss mitigation process to gain greater monetary benefits." (SAC, ¶ 305.)

In Ohio, civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams*, 700 N.E.2d at 868 (quoting *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995)).

Defendants argue that the intracorporate conspiracy doctrine precludes Plaintiffs' civil conspiracy claim because Plaintiffs allege that all Defendants are members of a single collective entity. (Servbank Mot., PageID 2586; TMS Mot., PageID 2653–54; Holdco and Papastavrou Mot., 2676–77; Case Mot., PageID 2640.) Under the intracorporate conspiracy doctrine, "individuals acting in their capacities of the same entity . . . cannot conspire with each other." *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 887 (6th Cir. 2024). *See also Innovative Architectural Planners, Inc. v. Ohio Dep't of Admin. Servs.*, 2024-Ohio-824, 239 N.E.3d 942, 955 (Ohio Ct. App. 2024). This is because, "[w]hen two agents of the same legal entity make an agreement in the course of their official duties . . . their acts are attributed to their principal . . . [and] there has not been an agreement between two or more separate people." *Innovative Architectural Planners, Inc.*, 239 N.E.3d at 955 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017)).

Plaintiffs allege that Holdco is the parent company of Servbank and TMS, that Mr. Papastavrou is the owner of Holdco, and that Ms. Case is an employee of Servbank. (SAC, ¶¶ 15–16, 55, 92, 206.) Although Plaintiffs plead that the relationship between Servbank and TMS is unclear, Plaintiffs also plead that *all* Defendants are members of one corporate entity

18

owned by Mr. Papastavrou. (*See id.*) Thus, accepting the allegations in the Second Amended Complaint as true, Defendants cannot conspire with each other, and Plaintiffs' civil conspiracy claim fails.

Accordingly, Defendants' Motions as to Plaintiffs' civil conspiracy claims are **GRANTED**.

### D.        Racketeer Influenced and Corrupt Organizations Act

Plaintiffs bring a federal claim under RICO against all Defendants except Ms. Case, alleging that they engaged in a pattern of fraud by sending fraudulent communications via the United States Postal Service. (SAC, ¶¶ 308–09, 313–14.)

The RICO criminal statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The statute provides a civil remedy to "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. §] 1962." 18 U.S.C. § 1964(c). "[T]o state a civil RICO claim, a plaintiff must allege (1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 594 (6th Cir. 2022).

Defendants argue that Plaintiffs fail to sufficiently plead an "enterprise." (Servbank Mot., 2587; TMS Mot., PageID 2656–57; Holdco and Papastavrou Mot., PageID 2679–81.) They assert that "simply naming related entities" is insufficient to plead a RICO claim. (TMS Mot., PageID 2657; Holdco and Papastavrou Mot., PageID 2680.) And that "Plaintiffs fail to allege any roles or relationships between [the Defendants] with any particularity" and instead rely on

19

"overly-broad generalizations of ownership and control." (Holdco and Papastavrou Mot., PageID 2680; *see also* Servbank Mot., PageID 2587 ("Yet not a single alleged bad actor is identified as the "enterprise" that engaged in the conduct . . .").)

Plaintiffs contend that they have sufficiently pled an "association-in-fact enterprise" as that term is defined in *Boyle v. United States*, 556 U.S. 938 (2009). "An association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. at 948. It must have "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. "A properly pled RICO claim must cogently allege activity that would 'show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (quoting *Frank v. D'Ambrosi,* 4 F.3d 1378, 1386 (6th Cir.1993)). A list of entities allegedly comprising the enterprise is insufficient and the "complaint must contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit.'" *Id.* (quoting *Frank*, 4. F3d at 1386).

The Second Amended Complaint alleges an organizational structure that satisfies the criteria outlined in *Boyle*. Specifically, it alleges that Mr. Papastavrou is the owner of Holdco, Servbank and TMS, that Holdco is the parent company of Servbank and TMS, and that Servbank and TMS are directed and controlled by Holdco and Mr. Papastavrou. (SAC, ¶¶ 15, 308.) This alleged structure goes beyond the insufficient allegation considered in *Begala*, where the plaintiff merely named a number of allegedly affiliated entities without offering any context into how they operated or coordinated. *Begala*, 214 F.3d at 780–82. Here, Plaintiffs sufficiently plead that Servbank, TMS, Holdco, and Mr. Papastavrou comprise a continuing unit that functions with a

20

common purpose, as required for an association-in-fact enterprise.

Defendants next argue that Plaintiffs' RICO claim is insufficient because they fail to show that they relied on the allegedly fraudulent communications. (Servbank Mot., PageID 2588; TMS Mot., PageID 2657; Holdco and Papastavrou Mot., PageID 2681.) First, the Court has determined that Plaintiffs have sufficiently pled reliance. Second, reliance is not an element of a RICO claim. The Supreme Court has held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008).

Defendants' arguments that Plaintiffs' RICO claim is insufficiently pled fail. Accordingly, their Motions regarding RICO are **DENIED**. The Court notes that additional or differently developed arguments may have warranted a different outcome. The Court's analysis, however, is limited to the arguments presented by Defendants.[2]

### E.    Ohio Corrupt Practices Act

Plaintiffs also bring a claim under the Ohio state-law equivalent of RICO, the OCPA, against all Defendants except Ms. Case for engaging in a pattern of fraud and sending fraudulent communications via the United States Postal Service. (SAC, ¶¶ 313–14.) The Second Amended Complaint incorrectly refers to the Ohio Corrupt Activity Act as "Racketeer Influenced and Corrupt Organizations Act (R.I.C.O.) O.R.C. § 2923." (*See id.*)

Defendants first argue that Plaintiffs fail to specify which section of Ohio Revised Code

---

[2] The Sixth Circuit has made clear that district courts must follow "the principle of party presentation," which means that the courts must "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.,* 143 F.4th 718, 725 (6th Cir. 2025) (quoting *Greenlaw v. United States,* 554 U.S. 237, 243 (2008)).

§ 2923 they present their claim, thus not providing Defendants a fair notice of the claim. (Servbank Mot., PageID 2589–90; TMS Mot., PageID 2659; Holdco and Papastavrou Mot., PageID 2682.) The Court acknowledges that the Second Amended Complaint does not properly name the OCPA or provide the full citation. But "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of the claim." *Knapp v. City of Columbus*, 93 F. App'x 718, 720 (6th Cir. 2004) (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988)). It is apparent that Defendants received sufficient notice that Plaintiffs' claim is under the OCPA because Defendants' Motions make arguments against the claim that reference and cite the OCPA. Thus, Plaintiffs' imprecise referral to the OCPA in the Second Amended Complaint is not fatal.

Defendants next argue that the OCPA claim fails because Plaintiffs fail to allege at least one predicate act that is not mail fraud. (Servbank Mot., PageID 2590; TMS Mot., PageID 2660; Holdco and Papastavrou Mot., PageID 2683.) To bring a civil claim under the OCPA, the claim must include "at least one predicate act that is not a form of securities fraud, mail or wire fraud, or the interstate transportation of stolen property or securities." *Bradley v. Miller*, 96 F. Supp. 3d 753, 774 (S.D. Ohio 2015) (Black, J.) (quoting *Baker v. Pfeifer*, 940 F. Supp. 1168, 1181 (S.D. Ohio 1996) (Black, J.). *See also* Ohio Rev. Code § 2923.34(A). The Court has concluded above that Plaintiffs sufficiently pled fraudulent misrepresentation. Thus, viewing the Second Amended Complaint in a light most favorable to Plaintiffs, the Court also finds that the Plaintiffs have sufficiently pled a predicate act of fraud that is separate from mail fraud. In other words, the Plaintiffs have sufficiently pled that Defendants engaged in fraudulent misrepresentation and used the United States Postal Service to further the fraud.

The Court finds that Plaintiffs have sufficiently pled their OCPA claim to survive a

motion to dismiss. Accordingly, Defendants' Motions regarding the OCPA are **DENIED**. As with the RICO claim, the Court analyzed only the arguments presented by Defendants and different arguments may have resulted in a different outcome.

## CONCLUSION

For the reasons stated above, (ECF No. 47) Servbank's Motion to Dismiss is **GRANTED in part** and **DENIED in part**; (ECF No. 54) TMS's Motion to Dismiss is **GRANTED in part** and **DENIED in part**; (ECF No. 55) Holdco and Mr. Papastavrou's Motion to Dismiss is **GRANTED in part** and **DENIED in part**; and (ECF No. 53) Ms. Case's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. The civil conspiracy claim against all Defendants is **DISMISSED**. The following claims remain:

- Three RESPA claims against Servbank, TMS, Holdco, and Mr. Papastavrou;
- Intentional fraudulent misrepresentation against all Defendants;
- Negligent fraudulent misrepresentation against all Defendants;
- RICO against Servbank, TMS, Holdco, and Mr. Papastavrou; and
- OCPA against Servbank, TMS, Holdco, and Mr. Papastavrou.

Further, Defendants filed a Motion to Strike the deposition transcript of Ms. Case filed on the docket by Plaintiffs because it was filed without an errata sheet. (ECF No. 63.) Plaintiffs have since filed supplemented the record by filing the errata sheet on the docket. (ECF No. 66.) Accordingly, Defendants' Motion to Strike (ECF No. 63) is **DENIED as moot**.

This case remains open.

**IT IS SO ORDERED.**

**3/11/2026**　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

23