IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NICOLAS POORMAN, *et al.*,

               Plaintiffs,

      v.

SERVBANK, *et al.*,

               Defendants.

Case No. 2:23-cv-3945
Judge Edmund A. Sargus, Jr.
Magistrate Judge S. Courter M. Shimeall

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Seal (ECF No. 113), wherein Defendants request that the Court permit Exhibit J to Plaintiffs' Motion for Summary Judgment to remain under seal.  Plaintiffs do not oppose the Motion.

## I.    LEGAL STANDARD

There is a strong presumption in favor of public access to judicial records.  *Stanley v. Turner Oil & Gas Properties, Inc.*, No. 2:16-CV-386, 2017 WL 5068444, at *1 (S.D. Ohio July 24, 2017). The Sixth Circuit has directed that documents filed with the Court may be placed under seal "[o]nly the most compelling reasons."  *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)).  "A movant's obligation to provide <u>compelling</u> reasons justifying the seal exists even if the parties themselves <u>agree</u> the filings should be sealed."  *White v. Wilberforce Univ.*, No. 1:16-CV-1165, 2017 WL 3537233, at *2 (S.D. Ohio Aug. 17, 2017) (emphasis in original) (citing *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 595 (6th Cir. 2016)).

To overcome that strong presumption of openness, a party seeking to seal court records "must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019).  The parties seeking to seal documents must demonstrate "document-by-document, line-by-line" why they meet their burden to seal.  *Shane Grp., Inc.*, 825 F.3d at 308.  The party seeking the seal must therefore "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations."  *Id.* at 305–06 (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002)).  These reasons and legal citations must be sufficient for a district court to "set forth specific findings and conclusions 'which justify nondisclosure to the public.'"  *Rudd Equip. Co., Inc.*, 834 F.3d at 594 (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176 (6th Cir. 1983)).

## II.    ANALYSIS

Defendants argue that Exhibit J should be sealed because "it contains trade secrets and, at a minimum, highly confidential commercial information."  (ECF No. 113, PAGEID #: 5358.)

Trade secrets are a "recognized exception to the right of public access to judicial records," *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1180, and the existence of a trade secret satisfies the first "compelling interest" element in *Shane Group*.  *See Kondash*, 767 F. App'x at 638.  A trade secret in Ohio is "information" that "derives independent economic value . . . from not being generally known to . . . other persons who can obtain economic value from its disclosure or use" and that a party expends reasonable efforts to keep secret.  *Hande's Enterprises, Inc. v. Schulenberg*, 765 F. App'x 117, 122 (6th Cir. 2019) (quoting Ohio Rev. Code § 1333.61(D)).  In Ohio, six non-dispositive factors are used to determine the existence of a trade secret:

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business . . . ; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Kondash*, 767 F. App'x at 638–39 (quoting *Heartland Home Fin., Inc. v. Allied Home Mortg. Cap. Corp.*, 258 F. App'x 860, 861–62 (6th Cir. 2008) (internal quotation omitted)).

A party can "establish that a compelling interest exists to protect confidential business information even if it is not a trade secret." *Ewalt v. Gatehouse Media Ohio Holding II, Inc.*, No. 2:19-cv-4262, 2022 WL 1080772, at *3 (S.D. Ohio Apr. 11, 2022) (citing *Kondash*, 767 F. App'x at 638). "But the burden is a heavy one." *JobsOhio v. Nexient, LLC*, No. 2:24-CV-1445, 2024 WL 5365019, at *3 (S.D. Ohio Oct. 22, 2024). While information that others could use to gain a competitive advantage may warrant sealing, a moving party still "must show that disclosure would 'seriously harm its competitive standing.'" *Ewalt,* 2022 WL 1080772, at *3 (quoting *United States ex rel. Scott*, No. 3:18-cv-61, 2021 WL 4449277, at *4 (W.D. Ky. Sept. 28, 2021)).

Exhibit J, which the Court has reviewed *in camera*, contains (1) the Subservicing Agreement between The Money Source ("TMS") and Servbank; and (2) TMS' Qualified Written Request Procedure and Servbank's Qualified Written Request Policy and Procedure (together, the "QWR Procedures"). (ECF No. 113, PAGEID #: 5358.)

Defendants make persuasive arguments that they have a compelling interest in sealing these materials. As to the Subservicing Agreement, Defendants argue that this document contains nonpublic negotiated commercial provisions governing the parties' subservicing relationship that they developed over an extended period of time and that, if made public, competitors could use it to improve their own negotiations or attempt to undercut Defendants by offering more favorable

3

terms in the marketplace.  As to the QWR Procedures, Defendants contend that these documents were developed through substantial internal investment and contain screenshots of customized proprietary software and "blueprints" of Servbank's and TMS's integration of federal, state, investor, and agency requirements into their daily procedures.  If made public, Defendants argue that competitors would use these documents to benefit from Defendants' investment in developing, refining, and customizing the Procedure without expending comparable resources.

As a technical matter, Defendants fail to address, however, why their interests outweigh the public's interest in the Subservicing Agreement and QWR Procedures.  *See Kondash*, 767 F. App'x at 637 (citing *Shane Grp.*, 825 F.3d at 305) (holding that, even "[w]here a party can show a compelling reason for sealing, the party must [still] show why those reasons outweigh the public interest in access to those records and that the seal is narrowly tailored to serve that reason").  This is particularly important here, given that these documents appear to bear heavily on the issues in this case.

This case challenges how TMS and Servbank handled Plaintiffs' mortgage loan modification applications and related RESPA communications, alleging a pattern of unlawful servicing practices and fraudulent misrepresentations, including a scheme to obscure whether Servbank and TMS are the same or separate entities.  The Subservicing Agreement, according to Defendants, "reflects the parties' negotiated allocation of rights, obligations, compliance responsibilities, reporting expectations, confidentiality requirements, and other operational terms." (ECF No. 113, PAGEID #: 5360.)  Plaintiffs directly rely on the Subservicing Agreement as evidence of TMS's and Servbank's overlapping relationship.  (ECF No. 108, PAGEID #: 4148.) Further, Plaintiffs' RESPA claims challenge TMS's and Servbank's compliance with regulations governing QWR responses.  As discussed above, Defendants describe the QWR Procedures as

4

"blueprints" of Servbank's and TMS's integration of federal, state, investor, and agency requirements into their daily procedures.  (ECF No. 113, PAGEID #: 5360.)  Therefore, this is not an instance where the documents at issue appear to have little or no bearing on the issues in a case. Consequently, the public's interest in accessing them is not minimal.  *See JobsOhio*, 2024 WL 5365019, at *4 (citing *Schnatter v. 247 Grp., LLC*, No. 3:20-CV-3-JRW-CHL, 2020 WL 3066622, at *2 (W.D. Ky. June 9, 2020) (denying in part a motion to seal a contract between parties where "the exhibits are central to the allegations in the Complaint regarding breach of contract")).

Lastly, Defendants' explanation of why their request is narrowly tailored does not convince the Court at this stage.  Although Defendants argue that sealing Exhibit J in its entirety is the "narrowest practical means of preventing disclosure" because "confidential information is pervasive throughout Exhibit J," the Subservicing Agreement contains seemingly boilerplate language or definitions that would not harm Defendants if disclosed.  (ECF No. 113, PAGEID #: 5362.)  For instance, Article I of the Subservicing Agreement contains a list of the Agreement's defined terms and Article IX contains a bevy of "miscellaneous" sections, such as sections governing force majeure and how notices shall be made under the Agreement.  Put simply, the Court does not find that Defendants' request is narrowly tailored because this information appears as if it does not need to be sealed to protect Defendants' economic or proprietary interests.  *See JobsOhio*, 2024 WL 5365019, at *5 (citing *Shane Grp., Inc.*, 825 F.3d at 305 ("[E]ven where a party can show a compelling reason why certain documents or portions thereof should be sealed, the seal itself must be narrowly tailored to serve that reason.")).

Accordingly, Defendants' request to seal Exhibit J is **DENIED without prejudice** subject to the directives below.

## III.    CONCLUSION

Defendants' request to seal Exhibit J is **DENIED without prejudice**.  The Court will,

however, afford Defendants an opportunity to submit **WITHIN FOURTEEN DAYS** of the date of this Order a properly supported motion to seal addressing why their interests in sealing Exhibit J outweigh the public's interest in accessing it and why their request is narrowly tailored.

In the interest of getting Plaintiffs' Exhibit J before the Court for its consideration of Plaintiffs' Motion for Summary Judgment, the Court **DIRECTS** Plaintiffs to file Exhibit J in its entirety under seal **WITHIN SEVEN DAYS** of the date of this Order.  If Defendants do not file a motion to seal within the time allotted, the Court will order Plaintiffs to file a public copy of Exhibit J.

Defendants are cautioned that any forthcoming motions to seal must fully meet the standards set forth by the Sixth Circuit and should be narrowly tailored, as the sealing of documents must be no broader than necessary.  *See Shane Grp., Inc.*, 825 F.3d at 305.

Finally, Plaintiffs also filed a placeholder for Exhibit K to their Motion for Summary Judgment.  (*See* ECF No. 108-50.)  Since Defendants do not seek to seal Exhibit K to Plaintiffs' Motion for Summary Judgment, Plaintiffs are further **DIRECTED** to file Exhibit K on the public docket **WITHIN SEVEN DAYS** of the date of this Order.

**IT IS SO ORDERED.**

/s/ S. Courter M. Shimeall
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

6